My name is Peter Tomeo. I represent Mr. Harper, the appellant defendant. I did not represent him in the court below. Your Honor, in this case, Mr. Harper seeks to have his plea back based upon the failure of the district court to establish that he understood all of his rights and, most importantly, that there was a factual basis for the plea. This is a case in which the record is bare upon the facts relating to this count two of the plea, which is the possession of a firearm in connection with the narcotics trafficking. Mr. Harper is not seeking to withdraw his plea to count one with the narcotics conspiracy. The — on that count, Your Honor, Mr. Harper had never stated anywhere that he — any facts relating to the charge. He acknowledged the charge existed, but he did not admit to possession of the firearm in any of the proceedings in this case. In fact — Let me ask you, Mr. Tomeo. Sure. It did look to me as if at the plea colloquy, after the judge went over the charges with him, the court asked whether, on the date specified, he knowingly and unlawfully possessed firearms, and Mr. Harper answered yes. Well — I think that's at 114 of the appendix, if you're looking for where I'm citing to. I believe so. Tell me — I understand that's not an inquiry into the facts the way we frequently see in guilty pleas, but it's hard for me to conclude that your client didn't acknowledge possession. Well, Your Honor, if you took those — that question-answer on page 114 by itself, I would agree with you. But it's out of context. The context is that the colloquy begins much earlier, and at that point, the judge is saying, I'm going to discuss the charges against you and the elements of those charges. And he goes through the language in the indictment and the — and the elements, and he asks if he — if he understands them. So by the point he gets to page 114, he's — he's being asked — he's answering yes, sir, but I would argue that in that context, he's arguing, yes, sir, I understand the charge and I understand the element. We're not saying he didn't understand the charge. We're saying that he didn't allocute to any facts supporting that charge. Importantly, Your Honor, there's only one instance where there's a firearm seized at any place to which Mr. Harper was ever seen, and Mr. Harper was seen there days before. In fact, I think a week and a half before. This is an apartment on 295 Smith Street. He was surveilled there on January 30th, and on February 9th, a gun is seized from that location. The government argues, well, there's constructive possession of that gun. But there's no evidence other than that surveillance tying him to that location. Counsel, I'm troubled by something else. The plea agreement, which the defendant signed, states that the defendant and the government agree to the following facts, which form the basis of — for the entry of the pleas of guilty, including relevant conduct. And paragraph D under that on A95 said that he — C&D said that he possessed firearms in furtherance of the drug trafficking crime. Now, that was signed in the presence of the judge, right? I'm not sure if it was signed on the day of the plea, and I'm not arguing with you, Your Honor, on that. Yeah, yeah. But it recites right in the transcript that they're signing it. But it doesn't — Why isn't that enough? Because he's not making that statement under oath. And this is — this Court has generally held that where there are contradictory statements in which a defendant is stating something different in connection with seeking to have his plea back, that they're going to give greater weight to the statement that he makes under oath. In this case — This is — this is a false statement, and the plea agreement would be a violation of 1001, wouldn't it? Yes, Your Honor, but equally the false — it would be a false statement when he told the judge prior to sentencing, I never had the gun. And where did — So he's got two false — he's got two statements that are inconsistent. Excuse me. Where did he say that? He says that in his letter, Your Honor, on page A134. He says, I never possessed, referring to the gun. And he says that — He says that in the — about six lines down in the text. He says, I'm going — in my case, it was a 924C1A, and I never possessed. 924C1A is a firearms count, and I think it's fair that the understanding here is that he's saying he never possessed that firearm. That statement is equal to the other statement in the letter. They're both statements that he made, neither under oath. And in the allocution, he does not make any statement under oath. And there's no other evidence tying him to this gun in connection with this offense. This is a location in which he is seen very seldom in the course of the investigation. He's never seen in possession with a gun in this case. And there's no statement that he ever makes that he had a gun in connection with this case. So, Your Honor, it seems that we have a situation where we're at equipoise. And in that situation, I would ask the Court to find that on that basis he should have been permitted to have his — his plea back, that there was a lack of a factual basis if he had made — as I said, if he had made a statement under oath. There's nothing else in the record. Sotomayor, I understand that — the gist of your argument that — Thank you, Your Honor. — the exchange. But, you know, at A121, he's read the charge again. This is after all the colloquy we've discussed. He pleads guilty. When that follows his signing of the agreement, and I think it was from the colloquy at A119 that makes it — us think that he signed the agreement in court right after the part that I read to you on page 118 — 114 — about the possession of the gun. I mean, why don't those three things together indicate that he was pleading guilty to having possessed the gun? I mean, there's no possibility that he thought he was pleading guilty to something else. It's not like he needed to have some element explained to him. Is that — I didn't understand that to be your argument. My argument, Your Honor, is that there's a lack of a factual basis. I don't find — now, I know at this point they say they hand up the plea agreement that's signed. So it is in the record whether he signed it at that point. What I'm saying is, with a crime like this, if the court had said to the defendant, tell me what you did on count two, and the defendant had said, I possessed a gun on that date, I'm not sure the court would have had to inquire into the circumstances of the possession. He admitted the crime. It's not like some other crimes where more probing would be required. So instead, he didn't give direct evidence, so to speak. He answered a leading question. Why isn't that enough? Because, Your Honor, that doesn't give us confidence that he, in fact, committed this crime, and there is a factual basis. And that's what the judges have to — the judge has to point out. Well, we are reviewing this on plain error review, right? Your Honor, I think after the Supreme Court's decision this week in McCoy, there's a question as to whether when you're dealing with a factual basis, you should be looking in terms of a plain error. I think what we're looking at here ought to be making sure that there is a factual basis for the plea, and I don't think you can get it from this record. Why I ask that is that by the time we get to sentence and there's the pre-sentence report, which there's no objection raised to, the circumstances of the possession are all spelled out. We're not in a situation where we have to really wonder what the circumstances of the possession were. Respectfully, Your Honor, I went over the plea, the pre-sentence report this morning to see that, and it's the same thing. What they do is they quote the plea agreement and they quote the charging language. They don't ever say that he's there on a day with a gun. No, no, but it's a location where he's got, that linked him to the apartment and the gun is there. So we know what the circumstances are. I didn't understand you to be saying that those were insufficient, what's in the plea agreement, to make out, to allow a person to plead possession. I'm saying, yes, Your Honor, I am. Not the plea agreement, I apologize, the pre-sentence report. The pre-sentence report, well, there's nothing more there than it's not in the plea agreement than the plea report. I am looking now to the final two prongs of plain error analysis, whether or not your client's prejudiced by this and whether it would be, whether it would call the repute of the criminal justice system into question to allow this plea to stand. Well, Your Honor, I think he is obviously prejudiced. He's got a five-year count. He wants to have, he wanted to have his day in court on this. He asserted he was, he did not possess it to the judge. And we don't have on this basis a record. Why was he pleading guilty then? Your Honor, we, he's obviously pleading guilty to an agreement that if he was guilty would be advantageous. But he is not pleading guilty, but he, prior to sentencing, indicates he does not possess the gun. Okay. Thank you, Mr. Trey. I know you want to reserve some time. Let's hear from you. Thank you, Your Honor. Good morning, Your Honor. Mary Catherine Baumgarten for the government. May it please the Court. If I may, I did get the 28-J letter when I was in transit last night, headed here from Buffalo, on the McCoy case. I think the McCoy case is factually distinguishable for precisely the reason that the government raised in our brief initially, is that at no point in time did the defendant squarely object to any of the factual bases during the plea colloquy. He was given ample opportunities, as this Court has already recognized earlier during my opposing counsel's argument, that not only were the elements reviewed for both of the charges in detail with the defendant, he acknowledged he understood what the government's proof would have been required by a reasonable doubt. And thereafter, the judge reviewed not once, but also twice with the defendant that these were the elements for each of the offenses, the two elements specifically addressing the 924C charge were reviewed with him. Look, this is not an ideal way to take a guilty plea, and this is not the only problem with the plea. I agree, Your Honor. As we conceded, there were other errors. I understand the responsibility is that of the district judge, but where is the government in ensuring that all of the requirements of Rule 11 are satisfied and alerting the judge to perhaps the need to inquire further? I was surprised that the government didn't request more inquiry, not just on this, but on other aspects of Rule 11. I agree that it would be best characterized as likely the floor of what a Rule 11 sufficient factual basis would be, and that the wiser course would have been for the line assistant to have inquired further. The challenge for that, though, Judge, I'm not conceding that there's anything wrong with this floor level, but the challenge is, is because at no point did the defendant, even though he was given the opportunity, even raise a question. He was clearly advised, if you have any questions, please alert the court, step back, you can talk to your counsel. And as the courts already recognized, there were two times it was directly addressed with the defendant, and he said, yes, I agree, pages 113, 114. And also the judge reviews the charge again with him at pages 116, 120, 121. And the defendant specifically, again, in response to, granted the judge read the charge again, he augments it a little bit, I'll say a little bit, by putting the specific date, which is February 9, 2015. And as this court noted, the PSR, because the government's position remains that despite McCoy, which we claim is an apposite here, plain error is the standard. And once the PSR comes and is reviewed, the PSR details the three search warrants in this case that were all executed on February 9, 2015. As the court noted, that the one particular location, 295 Smith Street, that's where one, a stolen .357 firearm handgun is loaded with five live rounds. Within that same apartment, that's what is seen on surveillance connecting specifically Harper to 295 Smith Street. Additionally, other documentation, including Harper's wallet and his passport, are at 295 Smith Street. Compelling evidence, the government asserts. Specifically, that's before the court in the PSR, because it's not just simply parroting. If I might direct the court's attention, I believe it's PSR paragraph starting at 38, where they start talking, and particularly the search at 295 Smith Street and what is seized during that search is reviewed. The four words that the defendant raises, and I never possessed, are hidden within that sentencing letter. It's very clear the thrust of the letter is the 180 months that I agreed to in my sentence, which was signed, as the court noted, after Judge Geraci went through in detail. It's signed. That's the court's practice to sign it at the end of the proceeding. And the defendant, so he makes the statements there, and he also adheres, I've reviewed this with my attorney. This is it. I understand all of the circumstances and all the contents of the plea agreement. It's not just what he says in court. He then, though, at sentencing, is given the opportunity, because the judge, correctly, I assert, looks at it as a sentencing letter. It's too long, too long to be away from my family, the 180 months, and addresses the one issue with respect to the inquiry that Mr. Harper has as to the difference in the guidelines. He didn't understand why 120 months applied. The judge works through that. The defendant says, I understand. And thereafter, the judge asks him, would you like to address the court? What would you like to say? At no point does the defendant bring that up, nor does his counsel. No one objects to anything. No one objects to the imposition of the sentence. The defendant does inquire. He asks for a copy of the sentencing transcript, so it might make you wonder why he's doing that at that juncture. But he's clearly given the opportunity to raise it. And if you look at the appendix, the defendant isn't shy about raising issues with the court below. He raises twice. He brings issues concerning questions he has about competency with his counsel. He gets his first attorney. He gets a new attorney. I wouldn't say he gets the attorney kicked off, because the magistrate is very clear that she's not doing it because there's any question with respect to the counsel who works out this very advantageous plea for him. Because clearly, when you look at the PSR and they start to talk about the relevant conduct within the PSR, there's clear proof. If he had faced the 280 grams or more of cocaine base with his prior 851, he would have faced a 20-year man-man. And if he had gone to trial, because the government's not going to parse out, will let you plead to a drug count, the conspiracy count on count one, and then try you on the others. That's not how it works. He would proceed to trial with all of them. And you can see in the PSR, once we get to that point again, his co-defendants have all pled guilty. They're falling off. So he's soon to be last man standing. So he would have faced 20, at least, on the count one, plus an additional five for the first. He still would have faced other charges, including the 856 premises charge, plus other counts, including a 922G felon in possession. So if he had proceeded to trial and been convicted, he would have faced 45 years in a mandatory minimum. So if I can just, with respect to McCoy, I'd just like to, while I haven't had a chance, obviously, to do anything written on it, I did have a chance to review the case issued recently by the Supreme Court. That is factually distinguishable. McCoy absolutely is clear on the fact that the defendant there maintained his innocence and wanted his defense to assert essentially that. And his counsel, he was initially, his initial counsel was relieved. He proceeded pro se for a period of time, and thereafter new counsel was retained by his family. That retained counsel made a strategic decision. Based on what he perceived to be the overwhelming evidence of the defendant's guilt, despite his continued profession, I'm not guilty. I was in Idaho and, in fact, was arrested in Idaho and extradited back to Louisiana to face the charges. He took the approach and conceded on opening and closing, despite the defendant getting, exercising his right to get on the stand and saying, I am innocent. I didn't do it. The defendant brought it up several times directly with the court, directly during in-court proceedings that I've already described and also prior, in front of the jury even. And that's the basis. That's why it's very clear the Supreme Court finds that to be a structural error that isn't subject to plain error analysis. But I ask the Court to continue along the same vein of your prior decisions of this Court and that plain error should be to this unobjected-to error. Thank you. You've made it much easier for me to read the Supreme Court opinion when I get to it. Let's hope so. Thank you. Mayor, you reserved some time. Yes, Your Honor. You know, the government keeps reaching to other portions of the record and says, well, because of this other action or things found in other locations, he must be guilty. But these other two searches have nothing to do with Mr. Harper. He was never seen at that location and he was never on any conversations with anybody telling him to go to those locations. In fact, Your Honor, I would say that those searches indicate that the gun, the source of the guns is probably one of his co-conspirators. Remember, in this case, it's a codex distribution network, but it has a hierarchy. And Mr. Harper is at a lower level. He has a partner and they're distributing for somebody higher up. Certainly, the fact that his wallet and passport were found is of no meaning. It equally could be some sort of collateral to make sure that Mr. Harper follows the directions of the person above him in order that he pays the debt. We don't know that. He never acknowledged having that firearm or being at the premises with the firearm or having that firearm in connection with that case. The government refers to constructive possession, but there's no linkage to him. And in the case they cite, the facts are completely different. The individual is found on a bed in an apartment. Drugs and paraphernalia are nearby. The loaded gun is under the bed. Here, all we have is Mr. Harper was at these premises 10 days earlier. Finally, I think it's very important to think about this idea of the risk that he takes by seeking his plea back, because I think that says volumes to the credibility of this statement. He's well aware that if he gets this plea back, he's going to be facing other charges. But he proceeds on that, and he argues for it. And to me, Your Honor, that indicates a belief he has that he's not guilty of this charge and he wants to have this charge adjudicated properly. And if the Court has no further questions, I'll rely on my briefs. Thank you both.